MEMORANDUM OPINION

May 10, 2005

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| GOVERNOR'S CROSSING | : | Case No. 03-36809 |
| OUTLET MALL, LLC | : | Chapter 11 |
| | : | |
| Debtor : | | |

BEFORE THE HONORABLE RICHARD STAIR, JR.
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

FOR THE DEBTOR:

MICHAEL H. FITZPATRICK, ESQ.
2121 First Tennessee Plaza
800 S. Gay Street
Knoxville, Tennessee  37929

FOR WELLS FARGO BANK MINNESOTA, NA:

DANIEL M. LITT, ESQ.
JOEL L. PERRELL, JR., ESQ.
2101 L Street, NW
Washington, DC  20037-1526

FOR COLLIER DEVELOPMENT COMPANY, INC.:

C. DAN SCOTT, ESQ.
100 E. Main Street, Suite 500
Sevierville, Tennessee  37862

APPEARANCES (continued):

FOR COMMUNITY TRUST BANK, NA:

GREGORY C. LOGUE, ESQ.
Post Office Box 900
Knoxville, Tennessee  37901

FOR UNITED STATES OF AMERICA,
INTERNAL REVENUE SERVICE:

SUZANNE H. BAUKNIGHT, ESQ.
Howard H. Baker, Jr. United States Courthouse
800 Market Street, Suite 211
Knoxville, Tennessee  37902

FOR THE UNITED STATES TRUSTEE:

BECKY H. HALSEY, ESQ.
Howard H.  Baker, Jr. United States Courthouse
800 Market Street, Suite 114
Knoxville, Tennessee  37902

1        THE COURT:  Before the court is the confirmation of the Second Modified Plan

2    of Reorganization for Governor's Crossing Outlet Mall, LLC Submitted by Wells Fargo

3    Bank, N.A., as Trustee, filed on May 10, 2005, by Wells Fargo Bank, N.A., as Trustee for

4    the registered holders of Morgan Stanley Capital I, Inc. Commercial Mortgage Pass-Through

5    Certificates, Series 1999-FNV1, by and through Allied Capital Corporation, its Special

6    Servicer.  The record before me consists of five exhibits stipulated into evidence, along with

7    the testimony of Phillip Don Collier, Vice President of Collier Development Company, Inc., a

8    1.6 percent member of the Debtor limited liability company.

9        This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

10        The Debtor filed a voluntary petition commencing its bankruptcy case under

11    Chapter 11 of the Bankruptcy Code on December 16, 2003.  On March 2, 2005, Wells

12    Fargo filed a First Amended Disclosure Statement to Plan of Reorganization for Governor's

13    Crossing Outlet Mall, LLC Submitted by Wells Fargo Bank, N.A., as Trustee, which the

14    court determined was adequate and was approved by Order Approving Disclosure

15    Statement, as Amended, Fixing Time for Filing Acceptances or Rejections of Plan, Fixing

16    Time for Filing Objections to Confirmation, and Fixing Date for Hearing on Confirmation,

17    Combined with Notice Thereof entered on March 3, 2005.  Wells Fargo's first modified plan

18    revised to conform to the disclosure statement as approved was then filed on March 31,

19    2005.  On April 12, 2005, Wells Fargo filed a Line Disclosing Postconfirmation Ownership

20    Pursuant to 11 U.S.C. § 1129(A)(5) Under Modified Plan of Reorganization for Governor's

21    Crossing Outlet Mall, LLC Submitted by Wells Fargo Bank, N.A., as Trustee, disclosing that

22    GC Sevierville Holdings, LLC, the company that will own 100 percent of the membership

23    interests in the reorganized Debtor is owned entirely by Wells Fargo.  The document further

24    states that none of the Debtor's preconfirmation equity holders will hold any membership

25    interest in or management positions with the reorganized Debtor.

1    Wells Fargo's plan, as further revised on May 6, 2005, was filed at this morning's

2    hearing as the second modified plan.  The plan, as modified through today, can be

3    summarized as follows:

4          The Debtor owns the following real property:

5          (1)  Approximately 18 acres improved with the outlet mall known as the

6    Governor's Crossing Outlet Mall or Phase I; and

7          (2)  Approximately 2.427 acres of unimproved property, more or less contiguous

8    to the mall, known as the Phase II property.

9          Wells Fargo, as the reorganized Debtor, will take over operations of the mall

10   property.  In doing so, it will assume an equity position through the reduction of its secured

11   claim by $200,000.00.

12         The Debtor's remaining property, consisting of the Phase II property, and any

13   avoidance, preference, or other actions will be transferred to a plan trust.  A plan trustee will

14   then market and sell the Phase II property.  Implementation of the plan will begin on the

15   effective date, at which time the Debtor's assets will vest in the reorganized Debtor and the

16   plan trust assets will vest therein.  The effective date shall be no later than 120 days following

17   confirmation.

18         On April 6, 2005, Wells Fargo filed a Line Designating Proposed Plan Trustee

19   Under Modified Plan of Reorganization for Governor's Crossing Outlet Mall, LLC Submitted

20   by Wells Fargo Bank, N.A., as Trustee, designating Michael Locraft, Vice President of Allied

21   Capital Corporation, Wells Fargo's special servicer, as plan trustee.

22         The plan sets forth four classes of claims and interests.  Class 1 is Wells Fargo's

23   secured claim in the amount of $10,000,000.00.  Class 1 shall be allowed in its entirety and

24   Wells Fargo will retain its lien on the mall property, including all leases and rents, until it is paid

25   in full.  The reorganized Debtor will pay only interest to Wells Fargo each month through

4

1    September 2008, at which time the loan will mature and be paid in full.  The funds for these

2    payments will come from the rents received from operation of the mall property.  If revenues

3    do not allow for payment of the interest, any unpaid interest will accrue as part of the principal

4    balance up to $200,000.00 aggregate accrual.

5         Class 2 is the secured claim of Community Trust Bank, N.A. in the stipulated

6    amount of $515,259.82, plus interest at prime rate plus 1 percent, currently 7 percent, and

7    reasonable attorneys' fees of approximately $3,000.00.  The plan proposes to pay only

8    interest to Community Trust Bank, N.A. on the balance of its claim through September 2008,

9    at which time it will be paid in full any outstanding amounts.  Community Trust Bank, N.A.'s

10   monthly interest payments will be derived from the continued operations of the mall property

11   and shall be paid before Wells Fargo is paid its monthly interest payment.  Once the Phase II

12   property is sold, the proceeds will be applied to Community Trust Bank, N.A.'s claim until

13   paid in full.  Community Trust Bank, N.A. will retain its lien on the Phase II property until it is

14   sold or Community Trust Bank, N.A. is paid in full.

15        General unsecured creditors make up Class 3 under the plan.  Unsecured

16   creditors will receive a pro rata distribution of any available net proceeds from the liquidation

17   of the plan trust assets.

18        Class 4 consists of the Debtor's current equity holders, who will receive no

19   distribution.  Instead, their interests in the Debtor will be extinguished and Wells Fargo will be

20   vested in 100 percent of the equity interests in the reorganized Debtor.  In exchange for

21   releasing the Debtor and its equity holders from liability, Wells Fargo will reduce its claim by

22   $200,000.00 and it will use the operating revenues derived from the mall property to service

23   payments of the Wells Fargo and Community Trust Bank, N.A. interest payments.

24        Following the effective date, the reorganized Debtor may pursue claims

25   objections, avoidance actions, preference actions, or any other causes of action that may be

1    pursued by the plan trustee and must consult with the reorganized Debtor with respect to

2    prosecution or settlement of any causes of action concerning the bankruptcy estate.  The plan

3    also requires all administrative expense claims, other than professional fees and ordinary

4    course expenses, to be filed on or before 60 days following the effective date and all

5    postpetition tax claims must be filed on or before the latter of 30 days following the effective

6    date, or 120 days after the filing of the tax return for postpetition taxes.

7            Additionally, on or after the effective date, all executory contracts and unexpired

8    leases not already assumed will be rejected and the reorganized Debtor will pay administrative

9    expenses, statutory fees, professional fees, allowed priority claims, and the attorneys' fees,

10   costs, and expenses associated with the property to sell and the plan trustee's recovery action

11   from the proceeds thereof and/or the proceeds realized from the sale of the Phase II property.

12   The plan trustee, Mr. Locraft, will not accept any fees for his services and will only request

13   reimbursement of actual expenses incurred.  Additionally, at this morning's hearing, Wells

14   Fargo represented to the court and was directed to file an addendum to the plan to the effect

15   that no fees from any Wells Fargo entity will be charged to the plan trust to the detriment of

16   unsecured creditors.

17           Balloting commenced, and on April 12, 2005, Wells Fargo filed its ballot

18   summary evidencing that Class 1, consisting of Wells Fargo's impaired secured claim in the

19   amount of $10,000,000.00, and Class 2, consisting of the impaired secured claim of

20   Community Trust Bank, N.A. in the amount of $518,259.82, accepted the plan.  Class 3,

21   consisting of the unsecured nonpriority claims in the total amount of $2,292,260.08, had three

22   ballots submitted evidencing the following:  (1) two creditors, or 66.7 percent of the claimants,

23   with claims totaling $1,449,026.82, or 63.2 percent of the value, accepted the plan; and

24   (2) one creditor, or 33.3 percent of the claimants, with claims totaling $843,233.26, or

25   36.8 percent of the value, rejected the plan.

1          On April 4, 2005, the United States Trustee filed the U.S. Trustee's Response to

2     the Plan Filed by Wells Fargo Bank, N.A. stating that he had no objection.  Collier

3     Development Company, Inc. filed an Objection to Confirmation on April 6, 2005, arguing

4     that the plan was not proposed in good faith, did not disclose the identity of the plan trustee,

5     was not in the best interests of creditors, and unfairly discriminated against unsecured

6     creditors.  Additionally, the Internal Revenue Service filed its Objection to Confirmation of

7     Plan of Reorganization for Governor's Crossing Outlet Mall, LLC Submitted by Wells Fargo

8     Bank, N.A., as Trustee, on April 7, 2005, contending that the plan failed to provide for

9     payment of its administrative claim, attempted to limit the liability of the plan trustee, attempted

10    to step up the basis of assets transferred to the plan trust, attempted to discharge tax claims

11    without paying them in full, and attempted to impose an injunction against the Internal Revenue

12    Service following discharge in violation of the anti-injunction provisions of 26 U.S.C. § 7421.

13         Pursuant to a Stipulation and Consent Order Resolving Objection by United

14    States of America, on Behalf of the Internal Revenue Service, to Plan of Reorganization

15    Submitted by Wells Fargo Bank, N.A., as Trustee, which was entered by the court on

16    April 26, 2005, Wells Fargo agreed to delete the language stepping up the basis for the assets

17    to be transferred to the plan trust, instead including language that the basis would be

18    determined and adjusted in accordance with applicable law.  Pursuant to the consent order,

19    Wells Fargo also agreed to exempt the United States Government for the liability limitation for

20    the plan trustee and to provide that any postpetition claims filed by the Internal Revenue

21    Service shall be deemed sufficient for payment in allowance of an administrative claim for the

22    Internal Revenue Service.  On April 28, 2005, the Internal Revenue Service filed its Notice of

23    Withdrawal of United States's Objection to Confirmation of Plan of Reorganization and the

24    withdrawal of its objection was reiterated by counsel at the evidentiary hearing and, indeed,

25    has been incorporated into the second amended plan that was filed this morning.

1    Accordingly, pursuant to the Joint Statement of (I) All Issues to be Resolved by

2    Bankruptcy Court and (II) Undisputed Facts, for Hearing on Confirmation of Plan of

3    Reorganization, as Modified, Submitted by Wells Fargo Bank, N.A., as Trustee, filed on

4    April 29, 2005, only the Collier Development Company, Inc. objection remains and the issues

5    before the court were stated by the parties as follows:

6    (1)  Whether Michael Locraft, Vice President of Allied Capital Corporation, a

7    representative of the special servicer to Wells Fargo, or a local Chapter 7 panel trustee should

8    be appointed as the plan trustee; and

9    (2)  Whether the provision of the plan that allows three years within which to

10    market the Phase II property is in the best interest of creditors or whether a shorter marketing

11    period should be ordered.

12    Although the parties' joint statement does not couch these issues as confirmation

13    requirements under 11 U.S.C. § 1129, counsel for Collier Development Company, Inc.

14    argued this morning that § 1129(a)(3) is in play as to the plan treatment of the Phase II

15    property and that § 1129(a)(5) is in play with regard to the appointment of the plan trustee,

16    Mr. Locraft.  These two subsections of § 1129(a) provide:

17    The court shall confirm a plan only if all of the following are met: . . .

18    (3)  The plan has been proposed in good faith and not by any means

19    forbidden by law. . . . (5)(A)(i)  The proponent of the plan has

20    disclosed the identity and affiliations of any individual proposed to

21    serve, after confirmation of the plan, as a director, officer, or voting

22    trustee of the debtor, an affiliate of the debtor participating in a joint

23    plan with the debtor, or a successor to the debtor under the plan; and

24    (ii) the appointment to, or continuance in, such office of such

25    individual, is consistent with the interests of creditors and equity

8

1   security holders and with public policy; and (B) the proponent of the

2   plan has disclosed the identity of any insider that will be employed or

3   retained by the reorganized debtor, and the nature of any

4   compensation for such insider.

5   Confirmation of a Chapter 11 plan is governed by 11 U.S.C. § 1129, which

6   provides that the court shall confirm the plan if certain enumerated requirements are met.

7   Additionally, such plan must contain provisions such as designation of classes, treatment of

8   claims, and adequate means of implementation, to name a few. *See generally*, 11 U.S.C.

9   § 1123. Additionally, within the context of class designation and treatment, a debtor is

10   afforded the ability to impair classes of creditors pursuant to 11 U.S.C. § 1124.

11   After adequate disclosure of the contents and terms therein, parties provided for

12   in a plan vote whether to accept or reject it. *See* 11 U.S.C. §§ 1125 and 1126. If it meets

13   all other requirements of § 1129, the plan may be confirmed. *See* 11 U.S.C. § 1129(a)(7)

14   and (8). One such requirement is that if the plan includes impaired classes, at least one class

15   of impaired creditors must vote to accept the plan. 11 U.S.C. § 1129(a)(10). Community

16   Trust Bank, N.A. is impaired and has voted to accept the plan. If there are rejections, the

17   plan may nevertheless be confirmed if all other § 1129(a) requirements are met and the plan

18   does not unfairly discriminate and is fair and equitable for each rejecting class. *See*

19   § 1129(b). In summary, "the bankruptcy court must determine whether the proposed plan

20   meets all the statutory requirements, including whether the claimants are properly classified,

21   whether the claimants are treated fairly within the class, whether the plan is proposed in good

22   faith and whether the plan is in the best interests of the creditors." *In re Dow Corning*

23   *Corporation*, 255 B.R. 445, 522 (E.D. Mich. 2000).

24   Here the only issues remaining before me are whether Mr. Locraft should be the

25   designated plan trustee and whether three years to market the Phase II property is too long,

1    and Collier Development Company argues that good faith is implicit in

2    these issues, as is the § 1129(a)(5) issue.  I will state, as both counsel acknowledged, that if

3    the court finds that neither of these issues can be found in favor of Wells Fargo, the proponent

4    of the plan, then the plan cannot be confirmed.  It is not up to the court to restructure Wells

5    Fargo's plan.  First, Collier Development argues that Mr. Locraft is employed by Allied

6    Capital, which is Wells Fargo special servicer, thus, he is not a disinterested person and

7    should not be allowed to act as plan trustee.  Primarily, Collier Development questions

8    Mr. Locraft's ability to act as a fiduciary of the plan trust rather than in the interests of Wells

9    Fargo.  To alleviate this alleged conflict, Collier Development suggests the appointment of a

10   current member of the Chapter 7 trustee panel as the plan trustee.  Again, that is beyond the

11   purview of the court's authority.  Second, with respect to the sale of the Phase II property,

12   Collier Development contends that allowing three years will greatly reduce the distribution to

13   unsecured creditors because more administrative expenses will be incurred and more interest

14   will be paid to Community Trust Bank, N.A. on its outstanding balance.  Based upon inquiries

15   received by Mr. Collier, Collier Development argues that one year is ample time to market

16   and sell the Phase II property so that there will be adequate proceeds to distribute to

17   unsecured creditors.  In opposition, Wells Fargo argues that prepetition efforts to market the

18   property over five to eight years by Mr. Collier and Collier Development have been

19   unsuccessful.  Mr. Collier testified that last year he received one inquiry regarding the Phase II

20   property and that this year he has received four; none of those inquiries have resulted in any

21   offer to purchase.  At any rate, Wells Fargo argues that the second modified plan should be

22   confirmed.

23          Collier Development argues that the "disinterested party" standard required for

24   appointment of a trustee in a Chapter 11 case, pursuant to 11 U.S.C. § 1104, should be

25   applied to the plan trustee whereby Mr. Locraft would be disqualified based upon his

10

1    relationship with Wells Fargo.  On the other hand, Wells Fargo argues that Mr. Locraft's

2    relationship to it, in conjunction with its status as an unsecured creditor, provides him with a

3    greater incentive than does a panel trustee to liquidate the Phase II property and pursue

4    avoidance and other actions for the benefit of unsecured creditors.  Furthermore, Wells Fargo

5    points out that Mr. Locraft has agreed to be reimbursed for his expenses incurred as plan

6    trustee, but will not accept fees for his services and, indeed, this is provided for by the plan,

7    whereas a panel trustee would require payment of his fees either on an hourly basis or at the

8    statutory rate.  Wells Fargo contends that the disparity in the fees would unnecessarily reduce

9    the dividend to unsecured creditors.

10           Wells Fargo designates Mr. Locraft as plan trustee pursuant to 11 U.S.C.

11    § 1123(b)(3), which allows a plan to provide for "the retention and enforcement by the

12    debtor, or by the trustee, or by a representative of the estate appointed for such purposes, of

13    any [settlement or adjustment of any claim or interest belonging to the debtor or to the estate].

14    11 U.S.C. § 1123(b)(3).  "[T]he appointment of a representative of the estate under

15    § 1123(b)(3)(B) must be approved by the court," which can be accomplished simply by

16    approval of the plan.  *Citicorp Acceptance Co. v. Robison (In re Sweetwater)*, 884 F.2d

17    1323, 1326 (10th Cir. 1989); *accord Retail Marketing Co. v. King (In re Mako, Inc.)*,

18    985 F.2d 1052, 1054 (10th Cir. 1993).  Generally, such actions pursued by a representative

19    appointed under § 1123(b)(3) are for the benefit of unsecured creditors, *see Official*

20    *Committee of Unsecured Creditors of Maxwell Newspapers, Inc. v. MacMillian, Inc. (In*

21    *re Maxwell Newspapers, Inc.)*, 189 B.R. 282, 287 (Bankr. S.D.N.Y. 1995), and "the

22    primary beneficiaries of § 1123(b)(3)(B) appointments should be unsecured creditors." *In re*

23    *LaBrum & Doak, LLP,* 227 B.R. 372, 380 (Bankr. E.D. Penn. 1998).  Accordingly,

24    "[t]otally disinterested parties can hardly be expected to undertake such difficult tasks [such

25    as prosecuting claims litigation]." *LaBrum & Doak, LLP,* 227 B.R. at 380.

1    The Bankruptcy Code defines "disinterested" persons as those who are not

2    creditors, insiders, or parties holding materially adverse interests to the estate or any class of

3    creditors.  *See* 11 U.S.C. § 101(14).  "By prohibiting any 'materially adverse' 'interest' to

4    any party to the bankruptcy 'for any . . . reason,' Congress plainly invited–indeed

5    compelled–federal courts to construe 'disinterestedness' against the backdrop of the equitable

6    duties that apply to positions of trust."  *United States v. Schilling (In re Big Rivers Electric*

7    *Corp.)*, 355 F.3d 415, 431 (6th Cir. 2004).  However, once the plan is confirmed, the debtor

8    in bankruptcy ceases to exist and the reorganized debtor takes control over the former

9    debtor's assets.  And although a liquidating trustee appointed pursuant to 11 U.S.C.

10    § 1123(b)(3)(B) is a fiduciary, he is not a bankruptcy trustee.  *See Holywell Corp. v. Smith*,

11    112 S. Ct. 1021, 1026-27 (1992); *White v. Williams (In re White)*, 152 B.R. 123, 129

12    (Bankr. N.D. Tex. 1992).  Therefore, there is no requirement that a disinterested party to the

13    reorganized debtor act as its agent, representative, or, in this case, plan trustee.

14    It is also compelling that Mr. Locraft has agreed not to accept payment of fees for

15    his services as plan trustee, a move that will increase any distribution to creditors.

16    Additionally, Mr. Locraft, as an agent of Wells Fargo, has the incentive to pursue actions that

17    will benefit all unsecured creditors based upon Wells Fargo's position as an unsecured

18    creditor.  The fact that Wells Fargo will also benefit cannot serve as the basis for disqualifying

19    Mr. Locraft's designation as plan trustee.  The court will, accordingly, overrule Collier

20    Development Company's objection on the plan trustee issue.

21    With respect to the Phase II property issue, Wells Fargo has modified

22    Section 9.3.2 of the plan to include the following language:

23    Transfer and Sale of the Phase II Real Property.  On the Effective

24    Date, the Phase II Real Property shall be transferred to the Plan

25    Trust.  Commencing on the Effective Date, the Plan Trustee, in

1    consultation with the Reorganized Debtor, shall use its reasonable

2    efforts to market and sell the Phase II Real Property in a

3    commercially reasonable manner.  **The sale of the Phase II Real**

4    **Property shall not be subject to Bankruptcy Court approval;**

5    **provided, however, if the gross purchase price for the Phase II**

6    **Real Property is less than $1,000,000.00, then Bankruptcy**

7    **Court approval shall be required after notice and hearing.**

8    Upon the sale of the Phase II Real Property, the Community Trust

9    Secured Claim shall be paid in full.  Any Net Sale Proceeds shall be

10    distributed in accordance with the provisions of this Plan and the Plan

11    Trust.  **If a sale of the Phase II Real Property has not occurred**

12    **on or before September 30, 2008, the Reorganized Debtor or**

13    **the Plan Trustee shall file papers with the Bankruptcy Court**

14    **seeking a determination of whether (i) the Plan Trustee should**

15    **continue to market the Phase II Real Property, (ii) the Phase II**

16    **Real Property should be sold by private sale or at public**

17    **auction, or (iii) such other action should be taken with respect**

18    **to the disposition of the Phase II Real Property.**

19    This plan provision does not require the plan trustee to wait for three years to

20    market the Phase II property; instead, it allows him that time within which to do so.

21    Furthermore, as Mr. Collier testified, there is a major thoroughfare project under construction

22    to extend Collier Drive, which runs in front of both the mall property and the Phase II

23    property, to connect with the New Middle Creek road project.  This extension is estimated to

24    increase traffic on Collier Drive substantially, and in turn, provide new opportunities for this

25    particular property.  Allowing Wells Fargo three years in which to take advantage of this

13

1    situation does not diminish its ability to market and sell the Phase II property sooner, if the

2    right offer arises.

3           Furthermore, none of these issues evidence any lack of bad faith or lack of

4    creditors' best interests. "[F]or purposes of determining good faith under section 1129(a)(3)

5    . . . the important point of inquiry is the plan itself and whether such a plan will fairly achieve a

6    result consistent with the objectives and purposes of the Bankruptcy Code." *In re PWS*

7    *Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000).  The second modified plan meets these

8    standards.

9           In summary, the court finds that the second modified plan meets all of the

10   confirmation requirements of 11 U.S.C. § 1129(a), except § 1129(a)(9) as regard Class 3

11   and the interests represented at Class 4.  However, the court finds that the plan does not

12   discriminate unfairly and is fair and equitable with respect to the impaired Class 3 claimants

13   and Class 4 interests and that the § 1129(b) cram-down requirements have accordingly

14   been fully satisfied.  The court will, therefore, overrule all of the Collier Development

15   Company objections and will confirm the second modified plan.  Counsel for Wells Fargo

16   will please prepare a proposed confirmation order with a clean copy of the second

17   modified plan attached, either accompanied by the addendum that I suggested this

18   morning or amend the plan with a provision in the confirmation order.

19          This Memorandum constitutes findings of fact and conclusions of law as

20   required by FED. R. CIV. P. 52(a), made applicable to this contested matter by

21   Rule 9014 of the Federal Rules of Bankruptcy Procedure.  I will not ask the court

22   reporter to transcribe my opinion.  If any party requests its transcription, an original

23   will be filed and I will clean it up as best I can and counsel will be served.  I will put

24   an order down overruling the objections and directing the plan be confirmed by

25   separate order.

1      FILED:  August 29, 2005

2                                                    /s/ Richard Stair, Jr.
                                                     RICHARD STAIR, JR.
3                                                    U.S. BANKRUPTCY JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25